# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID SAFIDI CAUTHEN, JR.,<br><br>       Plaintiff,<br><br>   vs.<br><br>IGNACIO RIVERA, et al.,<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 1:12cv01747 LJO DLB PC<br><br>FINDINGS AND RECOMMENDATIONS<br>REGARDING DISMISSAL OF CERTAIN<br>CLAIMS |

Plaintiff David Safidi Cauthen, Jr. ("Plaintiff") is a prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 28 U.S.C. § 1983.  Plaintiff filed this action on October 26, 2012.  Plaintiff names Kern Valley State Prison ("KVSP") Correctional Officers Jose Negrete, Matt Northcutt, Higinio Arreola, Enrique Castellanos, M. King, Correctional Sergeant Ignacio Rivera, Correctional Lieutenants M. Waddle and S. D. Hass, Acting Chief Deputy Warden C. Lawless and Nurse Rhennee Mackey as Defendants.

## A.   **LEGAL STANDARD**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are

legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 555).  While factual allegations are accepted as true, legal conclusions are not.  Id.

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law.  Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  Plaintiff's allegations must link the actions or omissions of each named defendant to a violation of his rights; there is no respondeat superior liability under section 1983.  Iqbal, 556 U.S. at 676-77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934.  Plaintiff must present factual allegations sufficient to state a plausible claim for relief.  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The mere possibility of misconduct falls short of meeting this plausibility standard.  Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

**B.**     **SUMMARY OF PLAINTIFF'S ALLEGATIONS**[1]

Plaintiff is incarnated at KVSP, where the events at issue occurred.

According to Plaintiff's complaint, on May 12, 2011, Plaintiff, a Rastafarian, was exercising on the D-Facility Middle Recreation Yard.  A fight occurred in the distance between Hispanic prisoners and officers were able to stop it.  Plaintiff was not involved in the fight and he was not near the location of the fight.  All prisoners on the yard were instructed to get down on the ground in a prone position.  Under Defendant Rivera's supervision, both male and female correctional officers formed a "scrimmage line" to inspect prisoners that were not involved in the fight.

While still lying on the ground, Defendant Negrete approached Plaintiff with instructions to submit to an unclothed body-cavity inspection.  Plaintiff objected to being "sexually exposed" in the presence of female staff, on the grounds of his religious Rastafarian beliefs, and asked Defendant Negrete if he could be searched outside of the presence of female staff.[2]  Defendant Rivera came over and Plaintiff, along with five other prisoners, repeated their request to be searched outside the presence of female staff.  Defendant Rivera instructed his staff to place Plaintiff in restraints for refusing a direct order.  Defendant King placed flex handcuffs on Plaintiff, but they were applied in a way that resulted in lacerations and swelling in Plaintiff's wrists and hands.  Defendant Rivera ordered Plaintiff to stand and walk backwards, which he did.  Under the instruction of Defendant Rivera, Plaintiff was left lying on the grass.  Defendant Rivera reported Plaintiff's objections to Defendant Waddle.  Defendant Waddle attempted to convince Plaintiff that it was in his best interests to submit to the body-cavity search.  Plaintiff repeated his religious objection and request to be searched outside the presence of female staff to Defendant Waddle.  Defendant Waddle told Plaintiff that she was under instructions to guarantee

---

[1]  Plaintiff's complaint references numerous exhibits, but there are no exhibits attached.

[2]  Plaintiff states that his Rastafarian beliefs involve the practice of striving towards purity and self-righteousness. Pursuant to this, his religion requires him to remain decently clothed in public and in the presence of women.

that he submitted to a body-cavity search and that she would see that one was conducted under any means necessary.  Defendant Waddle instructed Defendant Rivera to "strip Plaintiff out by any means necessary" and returned to the program office.

Plaintiff's restraints were so tight that he asked Defendant King to loosen them. Defendant King told Plaintiff that the restraints were not made for comfort and denied his request.  Plaintiff continued to lie on the ground for 30 minutes to an hour, perhaps two hours. He was not allowed to relieve himself and remained in restraints.

Defendant Rivera then approached Plaintiff and commented about Plaintiff "sticking to his guns."  Plaintiff repeated his request to Defendant Rivera, but Defendant Rivera instructed Plaintiff to stand so that staff could cut his clothes off.  He was forced to stand by Defendants Arreola and Castellanos, though he asked Defendant Rivera to not allow his staff to cut Plaintiff's clothes off on the yard.  Defendant Arreola asked Plaintiff why was "acting like a bitch."  Plaintiff asked Defendant Rivera to stop the disrespect, but Defendant Rivera just shrugged his shoulders and said, "so what, sue me."  He then instructed Defendants Negrete, Northcutt, Arreola and Castellanos to utilize force and "take him."

Plaintiff was then struck in the back of the head, with a closed fist, by Defendant Northcutt.  Plaintiff, with his hands still bound, was knocked off balance and took two or three steps forward so that he wouldn't fall on his face.  Defendant Negrete then struck Plaintiff in the left knee, causing Plaintiff's knee to buckle, and wrapped his arms around Plaintiff's legs to prevent him from moving.  Defendant Arreola grabbed Plaintiff's arms and forced them in an upward direction above Plaintiff's head, causing him to scream out in pain as he felt a sharp snap in his shoulder.  As Plaintiff was bent at the waist, Defendant Northcutt applied additional force to Plaintiff's back and struck Plaintiff down to the ground.  Defendants Northcutt, Negrete and Arreola all went down on top of Plaintiff.  Plaintiff was unable to soften the fall or protect himself from the concrete and he suffered numerous abrasions, as well as swelling, to his face.

While on the ground, Defendant Arreola commanded Plaintiff to stop resisting.  Plaintiff was not resisting, but Defendant Northcutt struck Plaintiff in the face and temples multiple times, with his fist.  Defendant Arreola choked Plaintiff and smeared his face into the ground, while the weight of the three men on top of Plaintiff cut off his air circulation.

Defendant Rivera then told Defendants Arreola, Northcutt and Negrete that it was enough, and to get Plaintiff stripped out.  Defendant Rivera instructed Defendant Negrete to cut off Plaintiff's clothes, which he did.  While Plaintiff was naked, with his hands bound and on the ground, Defendant Negrete conducted a body-cavity search.  The search wad negative.

Plaintiff could not walk and Defendant Rivera instructed Defendants Negrete, Northcutt and Arreola to lift Plaintiff off the ground and place him on a gurney.  Defendant Negrete grabbed Plaintiff by the legs, which were now in leg irons that were too tight, and dragged Plaintiff's naked body, face down, across the grass, gravel and dirt.  This was done in view of female staff.

Plaintiff was taken to D Facility Medical and Defendants Negrete and Arreola put Plaintiff, naked, on the bare floor of the medical holding cell.  Plaintiff was left there, without cover, screaming that he was hurt and in need of medical attention.

Defendant Mackey arrived at the Medical holding cage and reported that Plaintiff was not injured.  Plaintiff asked if he could see a doctor, but Defendant Mackey refused.  Plaintiff could not walk on his own and had obvious injuries on his face.  Plaintiff believes that Defendant Mackey did not report the injuries to protect the officers involved in the use of excessive force, pursuant to a CDCR "code of silence."

Defendant Mackey left Plaintiff in the holding cell, face down, with a tissue over his buttocks.  She refused to turn Plaintiff over to examine the front side of his body.  Plaintiff saw and tasted his own blood.  He did not receive any medical treatment while housed at KVSP.

When it was time for an on-camera interview related to Plaintiff's complaint of excessive force, Defendant Waddle gave Plaintiff a pair of boxer shorts.  Defendant Waddle ordered that the flex cuffs be replaced with metal hand cuffs.  She ordered staff to lift him from the floor and said, "Let's go shoot some porn."

After the interview, Plaintiff was taken back to the D Facility Medical holding cell and left there, with his hands and feet bound, until 6:00 p.m.  From 10:00 a.m. until 6:00 p.m., he was in restraints.  He was not fed the evening meal, offered water, or allowed to relieve himself.

Plaintiff was released from Medical and evaluated by another nurse.  He was taken, in a wheel chair, to Administrative Segregation ("Ad-Seg") for alleged battery on a peace officer.  Defendant Castellanos alleged that Plaintiff kicked him intentionally in the knee, and Defendants Rivera, Negrete, Northcutt and Arreola said that they witnessed this.

Defendant Waddle then submitted a CDCR 837 incident package that included false allegations and fabricated Rule Violation Reports.  He contends that Defendants Rivera, Negrete, Northcutt, Arreola and Castellanos filed false reports of battery based on Plaintiff kicking Defendant Castellanos.

Once he was rehoused in Ad-Seg, Plaintiff submitted an appeal on May 24, 2011, regarding officer misconduct, assault and the use of unnecessary force.  Plaintiff contends he experienced a violation of his right to appeal when Defendants Hass and Lawless refused to interview him at the second level.  Plaintiff alleges that Defendants Hass and Lawless lied and stated that they interviewed Plaintiff.  His appeal was denied through the third level.

On June 10, 2011, Plaintiff was found guilty at a disciplinary hearing for battery on a peace officer.  Plaintiff then had criminal charges brought against him as a result of the false reports.  Plaintiff was assessed a determinate and indeterminate sentence in the Secured Housing Unit ("SHU") and lost many of his privileges,  The practice of his religion was also restricted.  Plaintiff suffered significant and atypical hardships during his time in Ad-Seg and the SHU.

On July 12, 2012, Plaintiff was acquitted of the criminal charges.

Based on these factual allegations, Plaintiff makes the following claims:

1.      Excessive force in violation of the Eighth Amendment against Defendants Rivera, Negrete, Northcutt, Arreola, King and Waddle;

2.      Unreasonable search in violation of the Fourth, Eighth and Fourteenth Amendments against Defendants Rivera, Negrete and Waddle;

3.      Violation of the First Amendment and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") against Defendants Rivera, Negrete and Waddle;

4.      Retaliation in violation of the First and Fourteenth Amendments against Defendants Rivera and Negrete;

5.      Deliberate indifference to a serious medical need in violation of the Eighth Amendment against Defendant Mackey;

6.      Retaliation in violation of the First, Eighth and Fourteenth Amendments against Defendants Rivera, Negrete, Northcutt, Arreola and Castellanos; and

7.      Violation of the Fifth, Eighth and Fourteenth Amendments against Defendants Lawless and Hass.

**C.      ANALYSIS**

1.      Excessive Force- Eighth Amendment

The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citations omitted). For claims arising out of the use of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, __, 130 S.Ct. 1175, 1178 (2010) (per curiam) (citing Hudson, 503 U.S. at 7) (internal quotation marks omitted); Furnace v.

Sullivan, 705 F.3d 1021, 1028 (9th Cir. 2013).  The objective component of an Eighth

Amendment claim is contextual and responsive to contemporary standards of decency, Hudson,

503 U.S. at 8 (quotation marks and citation omitted), and although de minimis uses of force do

not violate the Constitution, the malicious and sadistic use of force to cause harm always violates

contemporary standards of decency, regardless of whether or not significant injury is evident,

Wilkins, 559 U.S. at __, 130 S.Ct. at 1178 (citing Hudson, 503 U.S. at 9-10) (quotation marks

omitted); Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002).

Plaintiff has stated an Eighth Amendment excessive force claim against Defendants

Rivera, Negrete, Northcutt, Arreola, King and Waddle.  He will be instructed on service by

separate order.

    2.    Unreasonable Search

        a.    *Fourth Amendment*

The Fourth Amendment prohibits only unreasonable searches.  Bell v. Wolfish, 441 U.S.

520, 558 (1979); Byrd v. Maricopa County Sheriff's Office, 629 F.3d 1135, 1140 (9th Cir.

2011); Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir. 1988).  The reasonableness of the

search is determined by the context, which requires a balancing of the need for the particular

search against the invasion of personal rights the search entails.  Bell, 441 U.S. at 558-59

(quotations omitted); Byrd, 629 F.3d at 1141; Bull v. City and Cnty. of San Francisco, 595 F.3d

964, 974-75 (9th Cir. 2010); Nunez v. Duncan, 591 F.3d 1217, 1227 (9th Cir. 2010);

Michenfelder, 860 F.2d at 332-34.  Factors that must be evaluated are the scope of the particular

intrusion, the manner in which it is conducted, the justification for initiating it, and the place in

which it is conducted.  Bell, 441 U.S. at 559 (quotations omitted); Byrd, 629 F.3d at 1141; Bull,

595 F.3d at 972; Nunez, 591 F.3d at 1227; Michenfelder, 860 F.2d at 332.  In analyzing these

factors, the cross-gender nature of the search is a critical consideration.  Byrd, 629 F.3d at 1143.

Plaintiff has stated a Fourth Amendment claim against Defendants Rivera, Negrete and Waddle.  He will be instructed on service by separate order.

        b.     *Eighth Amendment*

"After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Jordan v. Gardner, 986 F.2d 1521, 1525 (9th Cir.1993) (en banc) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)).  The alleged pain may be physical or psychological, Jordan, 986 F.2d 1521, and "the inmate must objectively show that he was deprived of something 'sufficiently serious.'" Foster v. Runnels, 554 F.3d 807, 812 (9th Cir.2009) (quoting Farmer v. Brennan, 511 U.S. 825, 834)).

The Ninth Circuit has recognized that digital rectal searches are highly intrusive and humiliating.  Tribble v. Gardner, 860 F.2d 321, 324 (9th Cir. 1998).  Prisoners thus have a clearly established right to be free from digital rectal searches conducted for purposes unrelated to legitimate penological concerns. Tribble, 860 F.2d at 325-27.  A digital rectal search may violate the Eighth Amendment if it is not reasonably related to any legitimate penological concerns. Id. at 325 n. 6.

In light of the involvement of a digital rectal search, as well as Plaintiff's contentions that he was not near the scene of the fight or involved, and that he agreed to submit to a cavity search outside the presence of female staff, the Court finds that Plaintiff has stated an Eighth Amendment claim against Defendants Rivera, Negrete and Waddle.  Plaintiff will be instructed on service by separate order.

        c.     *Equal Protection*

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008).  An equal protection claim may be established by showing that Defendants intentionally discriminated against Plaintiff based on his membership in

9

a protected class, <u>Comm. Concerning Cmty. Improvement v. City of Modesto</u>, 583 F.3d 690, 702-03 (9th Cir. 2009); <u>Serrano v. Francis</u>, 345 F.3d 1071, 1082 (9th Cir. 2003); <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. <u>Engquist v. Oregon Dep't of Agric.</u>, 553 U.S. 591, 601-02 (2008); <u>Vill. of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000); <u>Lazy Y Ranch Ltd. v. Behrens</u>, 546 F.3d 580, 592 (9th Cir. 2008); <u>North Pacifica LLC v. City of Pacifica</u>, 526 F.3d 478, 486 (9th Cir. 2008).

Here, Plaintiff also alleges that the search violated his equal protection rights under the Fourteenth Amendment.  It appears that Plaintiff believes that he did not receive "normal treatment for an inmate refusing to strip out," which Plaintiff states would have been placement on contraband watch.  Instead, because he objected based on his religion, Plaintiff believes that Defendants Rivera, Negrete and Waddle treated him he differently by conducting the body-cavity search.

However, according to Plaintiff's allegations, all prisoners on the yard that were not involved in the original fight were subject to inspection prior to returning inside.  Plaintiff explains that officers formed a "scrimmage line" while the prisoners who were not involved were prone and on the ground.  Those officers were instructed to "begin inspections of all prisoners so that a recall of prisoners on the yard can be conducted."  Compl. 6.  In other words, the officers were inspecting *all* inmates not involved in the fight prior to their return inside.  All of these inmates were subject to the same search and there is no indication that Plaintiff was singled out because of his religion.  Moreover, although Plaintiff believes that "normal treatment" would have entailed placement on contraband watch, it is clear from his allegations that inspections were to occur immediately so that the prisoners could return from the yard.

Accordingly, Plaintiff cannot state an equal protection claim and the Court recommends that it be dismissed.

3.      RLUIPA and The First Amendment

The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") provides:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution. . . , even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
(1) is in furtherance of a compelling government interest; and
(2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1.  Plaintiff bears the initial burden of demonstrating that defendants substantially burdened the exercise of his religious beliefs.  Warsoldier v. Woodford, 418 F.3d 989, 994-95 (9th Cir. 2005).  If plaintiff meets his burden, defendants must demonstrate that "any substantial burden of [plaintiff's] exercise of his religious beliefs is *both* in furtherance of a compelling governmental interest *and* the least restrictive means of furthering that compelling governmental interest."  Id. (emphasis in original).  "RLUIPA is to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs."  Id.

Similarly, under the First Amendment, "Inmates . . . retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348  (1987) (internal quotations and citations omitted).  The protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith.  Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008); Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997), overruled in part by Shakur, 514 F.3d at 884-85.

Here, Plaintiff's claim is based on his contention that Defendants Rivera, Negrete and Waddle cut of his clothes and exposed him to female officers.  Plaintiff cites his Rastafarian religious belief that he is "prohibited from sexually exposing or be[ing] exposed in public to the view of females."  In furtherance of this belief, Plaintiff requested that the search be conducted

outside the view of female officers, but his request was refused.  He further contends that this is a

"sin of eternal condemnation" and that he suffered emotional distress "from the burden of being

forced" to dishonor his God.  Compl. 41.

Construed liberally, Plaintiff has stated a claim under the First Amendment and RLUIPA

against Defendants Rivera, Negrete and Waddle.  He will be instructed on service by separate

order.

4.  <u>Retaliation</u>

Allegations of retaliation against a prisoner's First Amendment rights to speech or to

petition the government may support a section 1983 claim.  <u>Rizzo v. Dawson</u>, 778 F.2d 527, 532

(9th Cir. 1985); <u>see also</u> <u>Valandingham v. Bojorquez</u>, 866 F.2d 1135 (9th Cir. 1989); <u>Pratt v.

Rowland</u>, 65 F.3d 802, 807 (9th Cir. 1995).  "Within the prison context, a viable claim of First

Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some

adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that

such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did

not reasonably advance a legitimate correctional goal."  <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-

68 (9th Cir. 2005); accord <u>Watison v. Carter</u>, 668 F.3d 1108, 1114-15 (9th Cir. 2012); <u>Brodheim

v. Cry</u>, 584 F.3d 1262, 1269 (9th Cir. 2009).

a.  *Retaliatory Search*

It is undisputed that filing, or seeking to file, a prison grievance to seek redress from the

government is constitutionally protected speech.  Here, Plaintiff attempts to characterize his

objection to the outdoor search as "grievancing, by way of peaceful protest."  Compl. 41.

However, despite his characterization, Plaintiff's objection, prior to the search, was not a

grievance intended to seek redress from the government.

Moreover, in the prison context, not all speech is protected speech, and a prisoner does

not have the same First Amendment rights as a non-prisoner.  See <u>Bell v. Wolfish</u>, 441 U.S. 520,

545 (1979).   "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."  Pell v. Procunier, 417 U.S. 817, 822 (1974).  A prisoner's First Amendment claim "must be analyzed in terms of the legitimate policies and goals of the corrections system ...."  Id.

Regardless of how Plaintiff describes it, the speech he seeks to characterize as protected is simply an objection to a direct order.  In the prison context, "direct, face-to-face confrontation" relating to an order designed to uphold the safety of the prison is not protected speech.  See eg. Nunez v. Ramirez, 2010 WL 1222058, *5 (N.D. Cal. 2010) (finding a prisoner's statement that, "If you saw who was drinking, why don't you address that person instead of disrespecting everybody," is not protected speech).

Accordingly, Plaintiff cannot state a First Amendment retaliation claim against Defendants Rivera and Negrete based on his objections to their search orders.

To the extent Plaintiff seeks to lump in a Fourteenth Amendment equal protection claim based on a theory of retaliation, he cannot do so.  The retaliation claim is covered squarely by the First Amendment, and as explained above, there is no evidence that Plaintiff was singled out for a search based on his religion.

b.   *Retaliatory False Rules Violation Reports*

Plaintiff also alleges retaliation by Defendants Rivera, Negrete, Northcutt, Arreola and Castellanos based on their alleged fabrication of reports that implicated Plaintiff in an assault on Defendant Castellanos.

Again, however, Plaintiff's claim fails because the objection to the search is not protected speech.  Although the retaliatory action may be different, it does not alter the fact that there is no protected speech in the first instance.

Plaintiff is also unable to allege an equal protection claim based on the allegedly false rules violation reports.  As explained above, there is no indication that Plaintiff was treated differently because of his religion.

     5.    <u>Conditions of Confinement- Eighth Amendment</u>

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement.  <u>Morgan v. Morgensen</u>, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 847 (1994) and <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981)) (quotation marks omitted).  While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain.  <u>Morgan</u>, 465 F.3d at 1045 (citing <u>Rhodes</u>, 452 U.S. at 347) (quotation marks omitted).  Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment.  <u>Morgan</u>, 465 F.3d at 1045 (quotation marks and citations omitted); <u>Hope v. Pelzer</u>, 536 U.S. 730, 737 (2002); <u>Rhodes</u>, 452 U.S. at 346.

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, <u>Johnson v. Lewis</u>, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, <u>Morgan</u>, 465 F.3d at 1045 (quotation marks omitted).  To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety.  <u>E.g.</u>, <u>Farmer</u>, 511 U.S. at 847; <u>Thomas v. Ponder</u>, 611 F.3d 1144, 1150-51 (9th Cir. 2010); <u>Foster v. Runnels</u>, 554 F.3d 807, 812-14 (9th Cir. 2009); <u>Morgan</u>, 465 F.3d at 1045; <u>Johnson</u>, 217 F.3d at 731; <u>Frost v. Agnos</u>, 152 F.3d 1124, 1128 (9th Cir. 1998).

Plaintiff's conditions of confinement claim is based on his allegation that Defendants Rivera, Negrete, Northcutt, Arreola and Castellanos created false Rules Violation Reports that ultimately caused Plaintiff to serve a SHU term and defend against criminal charges.  However, "not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny," and it only the "unnecessary and wanton infliction of pain" suffices.  Whitley v. Albers, 475 U.S. 312, 319 (1986).  The issuance of Rule Violation Reports, even if false, does not rise to the level of cruel and unusual punishment.  See Uribe v. Taylor, 2012 WL 4953176, *7 (E.D.Cal. 2012);  Jones v. Prater, 2012 WL 1979225, *2 (E.D.Cal 2012) ("[P]laintiff cannot state a cognizable Eighth Amendment violation based on an allegation that defendants issued a false rules violation against plaintiff.");  Lopez v. Celaya, 2008 WL 205256, *5 (N.D.Cal. 2008) ("A prisoner has no constitutionally guaranteed immunity from being wrongly or falsely accused of conduct which may result in the deprivation of a protected liberty interest.").

Plaintiff is therefore unable to state an Eighth Amendment claim against Defendants Rivera, Negrete, Northcutt, Arreola and Castellanos based on the issuance of false Rules Violation Reports and the claim should be dismissed.

6.     Deliberate Indifference to a Serious Medical Need

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must show deliberate indifference to his serious medical needs.  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 295 (1976)) (quotation marks omitted).  The two-part test for deliberate indifference requires the plaintiff to show (1) a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain, and (2) the defendant's response to the need was deliberately indifferent.  Jett, 439 F.3d at 1096 (quotation marks and citation omitted).

Deliberate indifference is shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference. Id. (citation and quotation marks omitted). Deliberate indifference may be manifested when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care. Id. (citation and quotations omitted). Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

Based on the facts alleged, Plaintiff has stated an Eighth Amendment claim against Defendant Mackey. He will be instructed on service by separate order.

7.     Due Process Violations

"[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez v. DeRobertis, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986). Thus, a prison official's involvement and actions in reviewing a prisoner's administrative appeal cannot serve as the basis for liability in a section 1983 action. Buckley, 997 F.2d at 495.

Plaintiff's due process claim is based on his allegation that Defendants Lawless and Hass failed to review the issues raised in Plaintiff's appeal because they did not interview him at the second level.  However, as explained above, there is no constitutionally protected right to an inmate grievance procedure, and thus the manner in which the grievance was conducted cannot give rise to a claim against Defendants Lawless or Hass.  Plaintiff has not made any other allegations that would implicate procedural due process.

Insofar as Plaintiff attempts to state an equal protection claim and/or an Eighth Amendment claim based on the actions of Defendants Lawless and Hass, he cannot do so.  Again there is no indication that Plaintiff was treated differently because of his religion, and the actions do not rise to the level of cruel and unusual punishment.

## D.   **FINDINGS AND RECOMMENDATIONS**

Plaintiff's complaint states the following claims: (1) excessive force in violation of the Eighth Amendment against Defendants Rivera, Negrete, Northcutt, Arreola, King and Waddle; (2) unreasonable search in violation of the Fourth and Eighth Amendments against Defendants Rivera, Negrete and Waddle; (3) deliberate indifference to a serious medical need in violation of the Eighth Amendment against Defendant Mackey; and (4) violation of the First Amendment and RLUIPA against Defendants Rivera, Negrete and Waddle.  Plaintiff will be instructed on service by separate order.

The complaint does not state any further claims against these Defendants, and it does not state any claims against Defendants Lawless and Hass.  These deficiencies cannot be cured and the claims should be dismissed without leave to amend.  Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

Accordingly, it is HEREBY RECOMMENDED that this action proceed on the claims identified and that the remaining claims and defendants be DISMISSED WITHOUT LEAVE TO AMEND for failure to state a claim under section 1983.  These Findings and Recommendations

will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

    Dated:   **April 30, 2013**                         /s/ *Dennis L. Beck*
                                                      UNITED STATES MAGISTRATE JUDGE