# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID SAFIDI CAUTHEN, JR., | 1:12cv01747 LJO DLB PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION TO DISMISS |
| vs. | |
| RIVERA, et al., | (Document 21) |
| Defendants. | |

Plaintiff David Safidi Cauthen, Jr., ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action. Plaintiff filed this action on October 26, 2012.

On April 30, 2013, the Court issued Findings and Recommendations regarding dismissal of certain claims and Defendants. The Court recommended that this action go forward on the following claims: (1) excessive force in violation of the Eighth Amendment against Defendants Rivera, Negrete, Northcutt, Arreola, King and Waddle; (2) unreasonable search in violation of the Fourth and Eighth Amendments against Defendants Rivera, Negrete and Waddle; (3) deliberate indifference to a serious medical need in violation of the Eighth Amendment against Defendant Mackey; and (4) violation of the First Amendment and RLUIPA against Defendants Rivera, Negrete and Waddle.

On July 17, 2013, the Court adopted the Findings and Recommendations.

1

On August 22, 2013, Defendants Rivera, Mackey, Waddle, Negrete, Northcutt and Arreola filed this Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] Plaintiff opposed the motion on October 3, 2013, and Defendants filed their reply on October 10, 2013.

On December 17, 2013, after there was an apparent delay in transferring Plaintiff's property upon his transfer, the Court permitted him to file an amended opposition. Plaintiff filed his amended opposition on January 27, 2014, and Defendants filed their amended reply on January 31, 2014.

The motion is deemed submitted pursuant to Local Rule 230(l).

## I. LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)) (quotation marks omitted); Conservation Force v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011); Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The Court must accept the well-pleaded factual allegations as true and draw all reasonable inferences in favor of the non-moving party. Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010); Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007); Huynh v. Chase Manhattan Bank, 465 F.3d 992, 996-97 (9th Cir. 2006); Morales v. City of Los Angeles, 214 F.3d 1151, 1153 (9th Cir. 2000). Further, although the pleading standard is now higher, the Ninth Circuit has continued to emphasize that prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman,

---

[1] The motion does not relate to the sole claim against Defendant Mackey, and Defendant King filed an answer on January 14, 2014.

680 F.3d 1113, 1121 (9th Cir. May 25, 2012); Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).

## II. ALLEGATIONS IN PLAINTIFF'S COMPLAINT[2]

Plaintiff is currently incarcerated at the Salinas Valley Psychiatric Program in Soledad, California. The events at issue occurred while Plaintiff was incarnated at Kern Valley State Prison.

According to Plaintiff's complaint, on May 12, 2011, Plaintiff, a Rastafarian, was exercising on the D-Facility Middle Recreation Yard. A fight occurred in the distance between Hispanic prisoners and officers were able to stop it. Plaintiff was not involved in the fight and he was not near the location of the fight. All prisoners on the yard were instructed to get down on the ground in a prone position. Under Defendant Rivera's supervision, both male and female correctional officers formed a "scrimmage line" to inspect prisoners that were not involved in the fight.

While still lying on the ground, Defendant Negrete approached Plaintiff with instructions to submit to an unclothed body-cavity inspection. Plaintiff objected to being "sexually exposed" in the presence of female staff, on the grounds of his religious Rastafarian beliefs, and asked Defendant Negrete if he could be searched outside of the presence of female staff.[3] Defendant Rivera came over and Plaintiff, along with five other prisoners, repeated their request to be searched outside the presence of female staff. Defendant Rivera instructed his staff to place Plaintiff in restraints for refusing a direct order. Defendant King placed flex handcuffs on Plaintiff, but they were applied in a way that resulted in lacerations and swelling in Plaintiff's wrists and hands. Defendant Rivera ordered Plaintiff to stand and walk backwards, which he did. Under the instruction of Defendant Rivera, Plaintiff was left lying on the grass. Defendant

---

[2] Only the allegations relating to the remaining claims are set forth.

[3] Plaintiff states that his Rastafarian beliefs involve the practice of striving towards purity and self-righteousness. Pursuant to this, his religion requires him to remain decently clothed in public and in the presence of women.

3

Rivera reported Plaintiff's objections to Defendant Waddle. Defendant Waddle attempted to convince Plaintiff that it was in his best interests to submit to the body-cavity search. Plaintiff repeated his religious objection and request to be searched outside the presence of female staff to Defendant Waddle. Defendant Waddle told Plaintiff that she was under instructions to guarantee that he submitted to a body-cavity search and that she would see that one was conducted under any means necessary. Defendant Waddle instructed Defendant Rivera to "strip Plaintiff out by any means necessary" and returned to the program office.

Plaintiff's restraints were so tight that he asked Defendant King to loosen them. Defendant King told Plaintiff that the restraints were not made for comfort and denied his request. Plaintiff continued to lie on the ground for 30 minutes to an hour, perhaps two hours. He was not allowed to relieve himself and remained in restraints.

Defendant Rivera then approached Plaintiff and commented about Plaintiff "sticking to his guns." Plaintiff repeated his request to Defendant Rivera, but Defendant Rivera instructed Plaintiff to stand so that staff could cut his clothes off. He was forced to stand by Defendants Arreola and Castellanos, though he asked Defendant Rivera to not allow his staff to cut Plaintiff's clothes off on the yard. Defendant Arreola asked Plaintiff why was "acting like a bitch." Plaintiff asked Defendant Rivera to stop the disrespect, but Defendant Rivera just shrugged his shoulders and said, "so what, sue me." He then instructed Defendants Negrete, Northcutt, Arreola and Castellanos to utilize force and "take him."

Plaintiff was then struck in the back of the head, with a closed fist, by Defendant Northcutt. Plaintiff, with his hands still bound, was knocked off balance and took two or three steps forward so that he wouldn't fall on his face. Defendant Negrete then struck Plaintiff in the left knee, causing Plaintiff's knee to buckle, and wrapped his arms around Plaintiff's legs to prevent him from moving. Defendant Arreola grabbed Plaintiff's arms and forced them in an upward direction above Plaintiff's head, causing him to scream out in pain as he felt a sharp snap

in his shoulder.  As Plaintiff was bent at the waist, Defendant Northcutt applied additional force to Plaintiff's back and struck Plaintiff down to the ground.  Defendants Northcutt, Negrete and Arreola all went down on top of Plaintiff.  Plaintiff was unable to soften the fall or protect himself from the concrete and he suffered numerous abrasions, as well as swelling, to his face.

While on the ground, Defendant Arreola commanded Plaintiff to stop resisting.  Plaintiff was not resisting, but Defendant Northcutt struck Plaintiff in the face and temples multiple times, with his fist.  Defendant Arreola choked Plaintiff and smeared his face into the ground, while the weight of the three men on top of Plaintiff cut off his air circulation.

Defendant Rivera then told Defendants Arreola, Northcutt and Negrete that it was enough, and to get Plaintiff stripped out.  Defendant Rivera instructed Defendant Negrete to cut off Plaintiff's clothes, which he did.  While Plaintiff was naked, with his hands bound and on the ground, Defendant Negrete conducted a body-cavity search.  The search was negative.

Plaintiff could not walk and Defendant Rivera instructed Defendants Negrete, Northcutt and Arreola to lift Plaintiff off the ground and place him on a gurney.  Defendant Negrete grabbed Plaintiff by the legs, which were now in leg irons that were too tight, and dragged Plaintiff's naked body, face down, across the grass, gravel and dirt.  This was done in view of female staff.

Plaintiff was taken to D Facility Medical and Defendants Negrete and Arreola put Plaintiff, naked, on the bare floor of the medical holding cell.  Plaintiff was left there, without cover, screaming that he was hurt and in need of medical attention.

Defendant Mackey arrived at the Medical holding cage and reported that Plaintiff was not injured.  Plaintiff asked if he could see a doctor, but Defendant Mackey refused.  Plaintiff could not walk on his own and had obvious injuries on his face.  Plaintiff believes that Defendant Mackey did not report the injuries to protect the officers involved in the use of excessive force, pursuant to a CDCR "code of silence."

Defendant Mackey left Plaintiff in the holding cell, face down, with a tissue over his buttocks.  She refused to turn Plaintiff over to examine the front side of his body.  Plaintiff saw and tasted his own blood.  He did not receive any medical treatment while housed at KVSP.

## III. DISCUSSION

### A. Prior Screening Order

On April 30, 2013, the Court issued Findings and Recommendations indicating that it had screened Plaintiff's complaint pursuant to 28 U.S.C. § 1915A and found that it stated numerous causes of action.  The Findings and Recommendations were adopted on July 15, 2013.

While the Findings and Recommendations did not include a full analysis of all the causes of action now at issue,[4] the Court conducted the same examination as it does in all screening orders.  In other words, the Court's conclusion was based upon the same legal standards as this 12(b)(6) motion.

Defendants cite to a decision from the United States District Court for the Southern District of California for the proposition that statutory screening is cumulative of, and not a substitute for, any subsequent Rule 12(b)(6) motion.  Teahan v. Wilhelm, 481 F.Supp.2d 1115, 1119 (S.D. Cal. Mar. 28, 2007).  The decision of another district court is not binding, but in any event, this Court's position is not that the existence of a screening order is a complete bar to a subsequent Rule 12(b)(6) motion.  However, the legal standard for screening and for 12(b)(6) motions is the same, 28 U.S.C. § 1915A; Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012), and the screening order may not ignored or disregarded, Ingle v. Circuit City, 408 F.3d 592, 594 (9th Cir. 2005).

To the contrary, the existence of a screening order which utilized the same legal standard upon which a subsequent motion to dismiss relies necessarily implicates the law of the case

---

[4] Generally, the Court provides a fully reasoned analysis only where it must explain why the complaint *does not* state at least one claim.  In cases where the complaint states only cognizable claims against all named defendants, the Court will issue a shorter screening order notifying plaintiff that his complaint states a claim and that he must submit service documents.

6

doctrine, and as a result, Defendants are expected, reasonably so, to articulate the grounds for their 12(b)(6) motion in light of a screening order finding the complaint stated a claim. Ingle, 408 F.3d at 594; Thomas v. Hickman, No. CV F 06-0215 AWI SMS, 2008 WL 2233566, at *2-3 (E.D. Cal. May 28, 2008).

If the defendants, in a case which has been screened, believe there is a good faith basis for revisiting a prior determination made in a screening order, they must identify the basis for their motion, be it error, an intervening change in the law, or some other recognized exception to the law of the case doctrine. Ingle, 408 F.3d at 594 ("A district court abuses its discretion in applying the law of the case doctrine only if (1) the first decision was clearly erroneous; (2) an intervening change in the law occurred; (3) the evidence on remand was substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result.").

The duty of good faith and candor requires as much, and frivolous motions which serve only to unnecessarily multiply the proceedings may subject the moving parties to sanctions. Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc., 210 F.3d 1112, 1119 (9th Cir. 2000). Parties are not entitled to a gratuitous second bite at the apple at the expense of judicial resources and in disregard of court orders. Ingle, 408 F.3d at 594 (The law of the case "doctrine has developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.") (internal quotation marks and citation omitted); Thomas, 2008 WL 2233566, at *3 (for important policy reasons, the law of the case doctrine disallows parties from a second bite at the apple).

Therefore, Rule 12(b)(6) motions which fail to acknowledge the prior procedural history and screening orders, and which fail to articulate the reasons for the motion in light of the prior relevant orders, implicate the law of the case doctrine, unnecessarily multiply the proceedings, and fall well below the level of practice which is expected in federal court.

With this standard in mind, the Court will now address Defendants' arguments.

B.     Analysis

    1.     *Fourth Amendment Claim*

The Fourth Amendment prohibits only unreasonable searches.  Bell v. Wolfish, 441 U.S. 520, 558 (1979); Byrd v. Maricopa County Sheriff's Office, 629 F.3d 1135, 1140 (9th Cir. 2011); Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir. 1988).  The reasonableness of the search is determined by the context, which requires a balancing of the need for the particular search against the invasion of personal rights the search entails.  Bell, 441 U.S. at 558-59 (quotations omitted); Byrd, 629 F.3d at 1141; Bull v. City and Cnty. of San Francisco, 595 F.3d 964, 974-75 (9th Cir. 2010); Nunez v. Duncan, 591 F.3d 1217, 1227 (9th Cir. 2010); Michenfelder, 860 F.2d at 332-34.  Factors that must be evaluated are the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.  Bell, 441 U.S. at 559 (quotations omitted); Byrd, 629 F.3d at 1141; Bull, 595 F.3d at 972; Nunez, 591 F.3d at 1227; Michenfelder, 860 F.2d at 332.

In analyzing these factors, the cross-gender nature of the search is a critical consideration. Byrd, 629 F.3d at 1143.  It has long been recognized "that the desire to shield one's unclothed figure from the view of strangers, and particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity," id. at 1141 (citing York v. Story, 324 F.2d 450, 455 (9th Cir. 1963)) (internal quotation marks and alternations omitted), and the Ninth Circuit recently stated that the "litany of cases over the last thirty years has a recurring theme: cross gender strip searches in the absence of an emergency violate an inmate's right under the Fourth Amendment to be free from unreasonable searches."  Id. at 1146.

Defendants first argue that the search itself was not a "per se" violation of the Fourth Amendment, contending that a body cavity search that occurred after an inmate fight was justified.  Defendants next contend that the body cavity search was not conducted in the presence

of female officers, and that even if female officers were present, the search would have been an isolated incident that would not have violated the Fourth Amendment.

Defendants' arguments, however, require analysis beyond that applicable to the pleading stage and ignore the pleading standards applicable to pro se inmates. Although Defendants purport to acknowledge that a pro se plaintiff's pleadings should be liberally construed, their arguments ignore this directive.

Plaintiff has alleged that male and female officers formed a "scrimmage line" to inspect prisoners. Despite Plaintiff's requests to be searched outside of the presence of female officers, Defendants used force and conducted a body cavity search while Plaintiff was on the ground in the yard. Construing his allegations liberally, as this Court <u>must</u>, the Court determined that at this stage, the allegations were sufficient to state a Fourth Amendment claim.

Whether the search was reasonable is a factual issue beyond the scope of a 12(b)(6) motion. Moreover, Defendants' interpretation of Plaintiff's allegations is not determinative at this stage. For example, Defendants argue that based on Plaintiff's allegations, the search was not conducted in the presence of a female officer. While Defendants are correct that Defendant Waddle had left the yard prior to the search, they ignore Plaintiff's earlier allegation that both male and female officers formed a "scrimmage line" and "were to begin inspection of all prisoners. . ." Compl. 6. Somehow, Defendants now argue that it is "unreasonable to assume that a female Correctional Officer was present or observed the body cavity search." Mot. 5.

In their reply, Defendants take issue with Plaintiff's failure to allege penetration, and they characterize the search as a visual search. They also point out that Plaintiff's opposition fails to remedy this "deficiency." However, "'[t]he focus of any Rule 12(b)(6) dismissal . . . is the complaint.'" <u>U.S. v. Corinthian Colleges</u>, 655 F.3d 984, 991 (9th Cir. 2011) (citing <u>Schneider v. California Dept. of Corr.</u>, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). Again, the allegations in Plaintiff's complaint of a body cavity search are sufficient to state a claim. Neither Defendants'

9

characterization of the search, nor Plaintiff's failure to add allegations in his opposition, is relevant to this motion.  Similarly, Plaintiff's somewhat inflammatory description of events in his opposition is not relevant to this motion.

    Defendants next contend that the Fourth Amendment claim is duplicative of the Eighth Amendment claim.  Defendants believe that the "gravamen of Cauthen's claim is that he was stripped out in the view of unidentified female staff at KVSP so that Defendants Negrete, Northcutt, Arreola and Rivera could prove a point. . ." Mot. 6.  Using this characterization, Defendants contend that the Fourth Amendment provides no greater protection than the Eight Amendment.

    In the screening order, the Court specifically explained why the claim was sufficient under the Eighth Amendment:

> The Ninth Circuit has recognized that digital rectal searches are highly intrusive and humiliating.  Tribble v. Gardner, 860 F.2d 321, 324 (9th Cir. 1998).  Prisoners thus have a clearly established right to be free from digital rectal searches conducted for purposes unrelated to legitimate penological concerns.  Tribble, 860 F.2d at 325-27.  A digital rectal search may violate the Eighth Amendment if it is not reasonably related to any legitimate penological concerns.  Id. at 325 n. 6.
>
> In light of the involvement of a digital rectal search, as well as Plaintiff's contentions that he was not near the scene of the fight or involved, and that he agreed to submit to a cavity search outside the presence of female staff, the Court finds that Plaintiff has stated an Eighth Amendment claim against Defendants Rivera, Negrete and Waddle.

    Defendants have again taken liberties in construing Plaintiff's complaint.  Defendants may wish to have the claim analyzed under only the Eighth Amendment, but it is clear that allegations involving body cavity searches can be contrary to both the Fourth Amendment and the Eighth Amendment.  The invasiveness of the actual search may be at issue, but this is not the proper forum for resolving that issue.  Based on Plaintiff's allegation of a "body cavity search," the Court found that he could go forward on and Eighth Amendment claim.

    Defendants' arguments are without merit.

### 2. *First Amendment Claim*

Defendants next argue that the First Amendment claim is duplicative of the Eighth Amendment claim, contending that the "nature of his claim. . .is more closely regulated by the Eighth Amendment prohibition against Cruel and Unusual Punishment than the Free Exercise clause of the First Amendment." Mot. 6.

Again, the way in which Defendants would like to see this action proceed is irrelevant and the Court need not address it further. Defendants' citation to Jordan v. Gardner, 986 F.2d 1524 (9th Cir. 1993) does not support their argument. The decision by an appellate court not to address a claim is not precedent for dismissing the claim at the screening stage.

### 3. *Official Capacity*

Finally, Defendants argue that under the Eleventh Amendment, Plaintiff may not sue Defendants in their official capacity.[5]

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials in their official capacities." Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted). However, "[t]he Eleventh Amendment does not bar suits against a state official for prospective relief," Wolfson v. Brammer, 616 F.3d 1045, 1065-66 (9th Cir. 2010), and it does not bar suits seeking damages against state officials in their personal capacities," Hafer v. Melo, 502 U.S. 21, 30, 112 S.Ct. 358 (1991); Porter v. Jones, 319 F.3d 483, 491 (9th Cir. 2003).

Plaintiff sues Defendants in both their official capacity and individual capacity, and he requests declaratory relief and monetary damages. Therefore, insofar as Plaintiff requests monetary damages against Defendants in their official capacity, his claim should be dismissed. Plaintiff may seek damages against Defendants in their personal capacity.

---

[5] Defendants state that "Plaintiff's Complaint requests monetary damages from Defendants Hannah and Owen in their personal and official capacity." Mot. 7. However, there are no such named Defendants in this action and the Court assumes that this is a typographical error.

## IV. FINDINGS AND RECOMMENDATIONS

Based on the above, the Court HEREBY RECOMMENDS that Defendants' Motion to Dismiss, filed on August 22, 2013, be GRANTED IN PART as to Plaintiff's claim for damages against Defendants in their official capacity. It is DENIED on all other grounds.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." A party may file a reply to the objections within fourteen (14) days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  **February 7, 2014**                    /s/ *Dennis L. Beck*
                                                                          UNITED STATES MAGISTRATE JUDGE