# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID SAFIDI CAUTHEN, JR., | Case No. 1:12-cv-01747-LJO-DLB PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT |
| v. | (Document 62) |
| RIVERA, et al., | |
| Defendants. | THIRTY-DAY OBJECTION DEADLINE |

Plaintiff David Safidi Cauthen, Jr. ("Plaintiff") is a prisoner proceeding pro se and in forma pauperis in this civil rights action. Plaintiff filed his complaint on October 26, 2012. This action proceeds on the following claims: (1) excessive force in violation of the Eighth Amendment against Defendants Rivera, Negrete, Northcutt, Arreola, King and Waddle; (2) unreasonable search in violation of the Fourth and Eighth Amendments against Defendants Rivera, Negrete and Waddle; (3) deliberate indifference to a serious medical need in violation of the Eighth Amendment against Defendant Mackey; and (4) violation of the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") against Defendants Rivera, Negrete and Waddle.

///
///
///
///

Defendants filed the instant motion for partial summary judgment[1] on November 13, 2014.[2] Plaintiff opposed the motion on March 12, 2015. Defendants filed their reply on March 19, 2015. The motion is submitted upon the record without oral argument. Local Rule 230(l).

## I.    LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)). If Defendants meets their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

---

[1] Concurrently with their motion for summary judgment, Defendants served Plaintiff with the requisite notice of the requirements for opposing the motion. Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998).

[2] Defendants are not moving for summary judgment on the excessive force claim against Defendants Rivera, Negrete, Northcutt, Arreola and King.

In judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), cert. denied, 132 S.Ct. 1566 (2012).  The Court determines only whether there is a genuine issue for trial, and Plaintiff's filings must be liberally construed because he is a pro se prisoner.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

## II.   SUMMARY OF PLAINTIFF'S ALLEGATIONS

Plaintiff is currently incarcerated at Kern Valley State Prison, where the events at issue occurred.

According to Plaintiff's complaint, on May 12, 2011, Plaintiff, a Rastafarian, was exercising on the D-Facility Middle Recreation Yard.  A fight occurred in the distance between Hispanic prisoners and officers were able to stop it.  Plaintiff was not involved in the fight and he was not near the location of the fight.  All prisoners on the yard were instructed to get down on the ground in a prone position.  Under Defendant Rivera's supervision, both male and female correctional officers formed a "scrimmage line" to inspect prisoners that were not involved in the fight.

While still lying on the ground, Defendant Negrete approached Plaintiff with instructions to submit to an unclothed body-cavity inspection.  Plaintiff objected to being "sexually exposed" in the presence of female staff, on the grounds of his religious Rastafarian beliefs, and asked Defendant Negrete if he could be searched outside of the presence of female staff.  Defendant Rivera came over and Plaintiff, along with five other prisoners, repeated their request to be searched outside the presence of female staff.  Defendant Rivera instructed his staff to place Plaintiff in restraints for refusing a direct order.  Defendant King placed flex handcuffs on Plaintiff, but they were applied in a way that resulted in lacerations and swelling in Plaintiff's wrists and hands.

Defendant Rivera ordered Plaintiff to stand and walk backwards, which he did.  Under the instruction of Defendant Rivera, Plaintiff was left lying on the grass.  Defendant Rivera reported

3

Plaintiff's objections to Defendant Waddle. Defendant Waddle attempted to convince Plaintiff that it was in his best interests to submit to the body-cavity search. Plaintiff repeated his religious objection and request to be searched outside the presence of female staff to Defendant Waddle. Defendant Waddle told Plaintiff that she was under instructions to guarantee that he submitted to a body-cavity search and that she would see that one was conducted under any means necessary. Defendant Waddle instructed Defendant Rivera to "strip Plaintiff out by any means necessary" and returned to the program office.

Plaintiff's restraints were so tight that he asked Defendant King to loosen them. Defendant King told Plaintiff that the restraints were not made for comfort and denied his request. Plaintiff continued to lie on the ground for 30 minutes to an hour, perhaps two hours. He was not allowed to relieve himself and remained in restraints.

Defendant Rivera then approached Plaintiff and commented about Plaintiff "sticking to his guns." Plaintiff repeated his request to Defendant Rivera, but Defendant Rivera instructed Plaintiff to stand so that staff could cut his clothes off. He was forced to stand by Defendant Arreola and Officer Castellanos, though he asked Defendant Rivera to not allow his staff to cut Plaintiff's clothes off on the yard. Defendant Arreola asked Plaintiff why was "acting like a bitch." Plaintiff asked Defendant Rivera to stop the disrespect, but Defendant Rivera just shrugged his shoulders and said, "so what, sue me." He then instructed Defendants Negrete, Northcutt and Arreola, and Officer Castellanos to utilize force and "take him."

Plaintiff was then struck in the back of the head, with a closed fist, by Defendant Northcutt. Plaintiff, with his hands still bound, was knocked off balance and took two or three steps forward so that he wouldn't fall on his face. Defendant Negrete then struck Plaintiff in the left knee, causing Plaintiff's knee to buckle, and wrapped his arms around Plaintiff's legs to prevent him from moving. Defendant Arreola grabbed Plaintiff's arms and forced them in an upward direction above Plaintiff's head, causing him to scream out in pain as he felt a sharp snap in his shoulder. As Plaintiff was bent at the waist, Defendant Northcutt applied additional force to Plaintiff's back and struck Plaintiff down to the ground. Defendants Northcutt, Negrete and Arreola all went down on top of Plaintiff.

Plaintiff was unable to soften the fall or protect himself from the concrete and he suffered numerous abrasions, as well as swelling, to his face.

While on the ground, Defendant Arreola commanded Plaintiff to stop resisting. Plaintiff was not resisting, but Defendant Northcutt struck Plaintiff in the face and temples multiple times, with his fist. Defendant Arreola choked Plaintiff and smeared his face into the ground, while the weight of the three men on top of Plaintiff cut off his air circulation.

Defendant Rivera then told Defendants Arreola, Northcutt and Negrete that it was enough, and to get Plaintiff stripped out. Defendant Rivera instructed Defendant Negrete to cut off Plaintiff's clothes, which he did. While Plaintiff was naked, with his hands bound and on the ground, Defendant Negrete conducted a body-cavity search. The search was negative.

Plaintiff could not walk and Defendant Rivera instructed Defendants Negrete, Northcutt and Arreola to lift Plaintiff off the ground and place him on a gurney. Defendant Negrete grabbed Plaintiff by the legs, which were now in leg irons that were too tight, and dragged Plaintiff's naked body, face down, across the grass, gravel and dirt. This was done in view of female staff.

Plaintiff was taken to D Facility Medical and Defendants Negrete and Arreola put Plaintiff, naked, on the bare floor of the medical holding cell. Plaintiff was left there, without cover, screaming that he was hurt and in need of medical attention.

Defendant Mackey arrived at the Medical holding cage and reported that Plaintiff was not injured. Plaintiff asked if he could see a doctor, but Defendant Mackey refused. Plaintiff could not walk on his own and had obvious injuries on his face. Plaintiff believes that Defendant Mackey did not report the injuries to protect the officers involved in the use of excessive force, pursuant to a CDCR "code of silence."

Defendant Mackey left Plaintiff in the holding cell, face down, with a tissue over his buttocks. She refused to turn Plaintiff over to examine the front side of his body. Plaintiff saw and tasted his own blood. He did not receive any medical treatment while housed at KVSP.

///

///

///

### III. UNDISPUTED MATERIAL FACTS

On May 12, 2011, Plaintiff was housed at KVSP. ECF No. 1, at 4.

On May 12, 2011, a riot occurred on D-Facility Middle Recreation Yard at KVSP. Rivera Decl. ¶ 2. Plaintiff was not involved in the incident. Pl.'s Dep. 127:21-128:17.

As a result of the riot, an alarm was sounded so that additional staff would respond in order to quell the riot. Rivera Decl. ¶ 2. During the riot, Plaintiff complied with orders from correctional staff to get down onto the ground. Pl.'s Dep. 129:12-20.

After the riot was quelled, the inmates involved in the riot were escorted from the yard and the remaining inmates were ordered to submit to an unclothed body search. Rivera Decl. ¶ 3. The purpose of the search was to ensure that no inmates were attempting to conceal dangerous contraband or weapons, and to confirm that the remaining inmates did not have any injuries that were consistent with having been involved in the riot. Rivera Decl. ¶ 3. The remaining inmates were not allowed to return to their housing units until they had submitted to the unclothed body search. Rivera Decl. ¶ 3. In May 2011, this was standard procedure at KVSP. Rivera Decl. ¶ 3.

An unclothed body search includes having the inmate completely disrobe, bend over, spread the cheeks of their buttocks, and cough to expose the anal area for a visual inspection, so that staff can confirm that the inmate is not attempting to transport contraband hidden in this area of his body. Rivera Decl. ¶ 4.

Defendant Negrete gave the order to submit to the search. Pl.'s Dep. 133:1-7. At the time he gave the order, female officers who had responded to the riot were present. Pl.'s Dep. 133:18-135:2.

All remaining inmates submitted to the search, except for Plaintiff and five other inmates. Rivera Decl. ¶ 5. The inmates who had submitted to the search had left the yard to return to their housing units. Pl.'s Dep. 138:17-24. By the time these inmates had left, the female officers who had responded to the riot had also left the yard. Pl.'s Dep. 139:4-7.

///
///
///
///

1    Plaintiff refused to comply with the order to take his clothes off and submit to a search
2 because of his belief that it would be indecent to have people that don't "look like" him, such as
3 females or homosexuals, view his naked body.[3] Pl.'s Dep. 141:9-25.
4    Defendant Rivera then personally ordered the inmates who had refused to comply with the
5 order to submit to the unclothed body search. All remaining inmates complied, except for Plaintiff.
6 Rivera Decl. ¶ 5.
7    After the remaining inmates complied, the only people on the yard were Plaintiff, Defendants
8 Northcutt, Arreola, Rivera and Negrete, and Officer Castellanos. Pl.'s Dep. 140:19-141:3. Plaintiff
9 then told Defendant Rivera that he would not submit to a search due to his religious belief that he
10 could not be naked in front of female staff, and because Plaintiff had not been involved in the riot.
11 Rivera Decl. ¶ 5; Pl.'s Dep. 144:6-23.
12    Defendant Rivera told Plaintiff that if he did not submit to a search, his clothes would be cut
13 off to ensure that he was not attempting to conceal any type of dangerous contraband or weapons,
14 and that he did not have any injuries consistent with having been involved in the riot. Rivera Decl. ¶
15 5. Plaintiff continued to refuse to comply with Defendant Rivera's order. Rivera Decl. ¶ 5; Pl.'s
16 Dep. 3-10. Plaintiff suggested to Defendants Rivera and Waddle[4] that he be stripped out in the
17 Program Office. Pl.'s Dep. 147:11-15.
18    After the discussion with Defendant Waddle, she left the yard and went to her office in the
19 Program Office. Waddle Decl. ¶4. Before proceeding to her office, Defendant Waddle instructed
20 the correctional officers to proceed with the unclothed body search of Plaintiff. Waddle Decl. ¶ 4.
21    Defendant Rivera gave an order for Plaintiff's clothes to be cut off. Rivera Decl. ¶ 5; Pl.'s
22 Dep. 167:12-14. When Defendant Rivera gave the order, no female staff members were present on
23 the yard, and Defendant Rivera was unaware of any female staff members who were in a position to
24 observe Plaintiff's clothing cut off. Rivera Decl. ¶ 6.

---

[3] Plaintiff purports to dispute this fact, though the nature of his disagreement is not apparent. This contention forms the basis of his religious claims. In any event, the fact is taken almost directly from Plaintiff's own deposition testimony and allegations.

[4] Defendant Waddle, a female, came out to the yard when she noticed a group of officers standing over Plaintiff. Waddle Decl. ¶ 4.

After his clothes were cut off, Plaintiff was placed in leg restraints following an incident with Defendants Negrete, Northcutt and Arreola. Rivera Decl. ¶ 7; Pl.'s Dep. 154:11-17.

A Defendant spread the cheeks of Plaintiff's buttocks after the leg restraints had been applied, and while Plaintiff was on the ground.[5] Pl.'s Dep. 169:17-20. Plaintiff's anus was not penetrated in connection with this incident. Pl.'s Dep. 97:11-16.

From her office in the Program Office, Defendant Waddle could not observe, and did not observe, Plaintiff's clothes being removed. Waddle Decl. ¶ 5; Pl.'s Dep. 150:4-7. From his location on the yard, Plaintiff could not see Defendant Waddle in her office. Pl.'s Dep. 150:4-7.

From his location on the yard, Plaintiff could see female nurses, but they were not looking at him. Pl.'s Dep. 150:8-151:6. As of May 12, 2011, Plaintiff did not know of any female staff who observed his clothes stripped off. Pl.'s Dep. 153:7-154:6.

When Plaintiff stated that he was unable to stand, he was placed on a medical gurney and examined by Defendant Mackey, who ordered him transported to the D Yard Medical Clinic.[6]

In the medical clinic, Defendant Mackey placed a piece of tissue on Plaintiff. Pl.'s Dep. 180:11-3. Defendant Mackey examined Plaintiff on May 12, 2011, in order to clear him for admission to the Administrative Segregation Unit ("Ad-Seg").[7] Mackey Decl. ¶ 3.

The procedure to clear an inmate for admission to Ad-Seg involved performing a limited physical examination of the inmate in order to determine whether the inmate required medical treatment on an urgent basis prior to transfer, treating any urgent or emergency medical conditions noted during the examination, and notifying a registered nurse or physician of the findings. Mackey Decl. ¶ 3.

Plaintiff told Defendant Mackey that he was experiencing pain in his shoulder, mid-back and upper-back. Plaintiff also had a headache, swelling about his right eye, bruising in his genital area, and bleeding on the inside of his mouth. Pl.'s Dep. 185:7-11, 189:10-190:14; Mackey Decl. ¶ 4.

---

[5] In his complaint, Plaintiff states that Defendant Negrete spread the cheeks of his buttocks. Defendants, in this motion, state that this was done by Defendant Rivera. This dispute is not relevant, however, as only the method and circumstances of the search are at issue.

[6] Defendant Mackey was a Licensed Vocational Nurse at the time. Mackey Decl. ¶¶ 1-2.

[7] Plaintiff attempts to dispute this fact by arguing that Defendant Mackey refused to treat his injuries. This does not dispute the fact that she examined him in the first instance, however.

Plaintiff did not experience a loss of consciousness during the incident, or sustain any broken bones. Pl.'s Dep. 179:11-25. The headaches, right eye swelling, bruising to the genital area and bleeding in the mouth healed within two months without medical treatment. Pl.'s Dep. 190:15-20; 192:11-193:25. Plaintiff had pre-existing problems with his left knee, which did not get worse because of the May 12, 2011, incident. Pl.'s Dep. 191:18-192:10; 195:2-196:18.

Based on the information provided by Plaintiff, and obtained in her examination of Plaintiff, Defendant Mackey concluded that Plaintiff did not have any urgent medical needs and did not require emergency care. Mackey Decl. ¶ 6. Defendant Mackey then cleared Plaintiff for admission to Ad-Seg and notified Registered Nurse Lunsford of her findings, with the understanding that Nurse Lundsford would ensure that Plaintiff received any necessary follow-up care, should it be required. Mackey Decl. ¶ 5.

According to Plaintiff's deposition testimony, his belief that his religious beliefs would be violated if his naked body was exposed to those that did not look like him is based on the Biblical instruction not to lay with a man as one would lay with a woman, the Ten Commandments, and not to show oneself as they walk of the Earth, the alter of God. Pl.'s Dep. 63:3-7.

### IV. ANALYSIS

#### 1. Fourth Amendment Search

The Fourth Amendment prohibits only unreasonable searches. Bell v. Wolfish, 441 U.S. 520, 558 (1979); Byrd v. Maricopa County Sheriff's Office, 629 F.3d 1135, 1140 (9th Cir. 2011); Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir. 1988). The reasonableness of the search is determined by the context, which requires a balancing of the need for the particular search against the invasion of personal rights the search entails. Bell, 441 U.S. at 558-59 (quotations omitted); Byrd, 629 F.3d at 1141; Bull v. City and Cnty. of San Francisco, 595 F.3d 964, 974-75 (9th Cir. 2010); Nunez v. Duncan, 591 F.3d 1217, 1227 (9th Cir. 2010); Michenfelder, 860 F.2d at 332-34. Factors that must be evaluated are the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. Bell, 441 U.S. at 559 (quotations omitted); Byrd, 629 F.3d at 1141; Bull, 595 F.3d at 972; Nunez, 591 F.3d at 1227; Michenfelder, 860 F.2d at 332.

1          In analyzing these factors, the cross-gender nature of the search is a critical consideration.
2   Byrd, 629 F.3d at 1143.  It has long been recognized "that the desire to shield one's unclothed figure
3   from the view of strangers, and particularly strangers of the opposite sex, is impelled by elementary
4   self-respect and personal dignity," id. at 1141 (citing York v. Story, 324 F.2d 450, 455 (9th Cir.
5   1963)) (internal quotation marks and alternations omitted), and the Ninth Circuit recently stated that
6   the "litany of cases over the last thirty years has a recurring theme: cross gender strip searches in the
7   absence of an emergency violate an inmate's right under the Fourth Amendment to be free from
8   unreasonable searches." Id. at 1146.
9          In this action, it is undisputed that a riot occurred on the yard on which Plaintiff was present.
10  He was not involved in the riot, but standard procedure required that all inmates, whether involved
11  or not, undergo an unclothed body search.  The search ensures that an inmate is not smuggling
12  contraband, and did not have injuries consistent with having participated in the riot.  Generally, the
13  search does not involve touching.
14         It is also undisputed that although female staff members were present when Defendant
15  Negrete initially ordered Plaintiff to submit to the search, all female staff had departed prior to the
16  search at issue.  By the time the other inmates were searched, all female staff who had responded to
17  the riot had left the yard.  Similarly, while Defendant Waddle, a female, was present for a period of
18  time, she had gone back to her office prior to the search.  When Defendant Rivera gave the order for
19  Plaintiff's clothes to be cut off, there were no female staff members present.  From her office,
20  Defendant Waddle could not see the search, and from his location on the yard, Plaintiff could not see
21  Defendant Waddle.  Plaintiff states that he could see female nurses in the office from his location on
22  the yard, but they were not looking at him.
23         Defendants have carried their burden of showing the absence of evidence to support
24  Plaintiff's claim.  There was a strong penological need for the search and no female staff members
25  were present on the yard at the time of the search.[8]  The search had to be conducted on the yard to
26  fulfill its purpose- to prevent inmates from returning to their housing units with contraband, or as

---

[8] The Court notes that Byrd is inapplicable given the undisputed facts that no female staff members were present at the time of the search.

10

having unknowingly been involved in the riot. See Michenfelder, 860 F.2d at 333 ("[W]e will not question [prison officials'] judgment that conditions in [a prison unit] reasonably require searches outside the prisoners' cells in order to protect the safety of the officers conducting them."); see also Thompson v. Souza, 111 F.3d 694, 697, 701 (9th Cir.1997) (approving an intrusive strip search conducted in view of jeering inmates). Finally, the search could not be conducted in the conventional manner because Plaintiff's legs were shackled after an incident. The burden now shifts to Plaintiff to demonstrate a genuine dispute of material fact.

In his opposition, Plaintiff complains that after the search, his "nude person was placed on a medical gurney" and Defendants "proceeded to parade [his] naked body to D-Facility Medical where the presence of female staff was high." ECF No. 64, at 15. He also alleges that he was placed into a medical holding cage, naked and with no covers. The Fourth Amendment, however, is applicable only to the actual search.

To the extent that Plaintiff argues that the search was more than just an unclothed visual search because a Defendant touched the cheeks of his buttocks, it is undisputed that Plaintiff was in leg restraints at the time of the search and a conventional search could not be conducted. Moreover, as noted above, the penological justification in this situation was high.

Based on the undisputed facts, the search was not unreasonable under the Fourth Amendment and Defendants Rivera, Negrete and Waddle are entitled to summary judgment.

2. Eighth Amendment Search

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. Hope v. Pelzer, 536 U.S. 730, 737, 122 S.Ct. 2508 (2002) (citing Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078 (1986)) (quotation marks omitted). Among unnecessary and wanton inflictions of pain are those that are totally without penological justification. Hope, 536 U.S. at 737 (citing Rhodes v. Chapman, 452 U.S. 337, 346, 101 S.Ct. 2392 (1981)) (quotation marks omitted). Punitive treatment which amounts to gratuitous infliction of wanton and unnecessary pain is prohibited by the Eighth Amendment. Id. at 738 (quotation marks omitted).

The Ninth Circuit has recognized that digital rectal searches are highly intrusive and humiliating. Tribble v. Gardner, 860 F.2d 321, 324 (9th Cir. 1998). Prisoners thus have a clearly established right to be free from digital rectal searches conducted for purposes unrelated to legitimate penological concerns. Tribble, 860 F.2d at 325-27. A digital rectal search may violate the Eighth Amendment if it is not reasonably related to any legitimate penological concerns. Id. at 325 n. 6.

It undisputed that Plaintiff's anal cavity was not penetrated during the search. It is also undisputed, as noted above, that the penological justification for the search was high. Defendants have therefore carried their burden of showing the absence of evidence to support Plaintiff's claim that the search rose to the level of an Eighth Amendment violation.

Plaintiff's main argument in opposition is based on his contention that the "hands serve as the mechanical instrument" in the spreading of the cheeks of his buttocks, therefore elevating the egregiousness of the search. ECF No. 64, at 14. Plaintiff is correct that the search involved touch for the purpose of examination while he was in leg restraints, but this does not, on its own, convert the search into one that violates the Eighth Amendment.

To support his argument, Plaintiff cites Bonitz v. Fair, 804 F.2d 164 (1st Cir. 1986) to demonstrate the difference between a visual body search and a search involving touching. Bonitz, however, involved a much different set of facts. There, non-medical officers touched and placed their fingers in the noses, mouths, anuses and vaginas of female inmates, and the searches were conducted in the presence of male officers and in a non-hygienic setting.

The facts relating to the search in this case are far from the extreme facts in Bonitz. While Plaintiff's search involved touching, there was no penetration of any body cavity and the search was not conducted in the presence of any female officers.

Plaintiff also suggests that he was sexually humiliated, paraded around naked and placed into the medical holding cage naked. There is no evidence that Plaintiff was sexually humiliated or paraded around naked. To the extent he was placed in the holding cage naked, there is no evidence that this rose to the level of an Eighth Amendment violation.[9]

---

[9] The Eighth Amendment claim was based on the search, not the events after the search.

The undisputed facts therefore show that the search conducted by Defendants Rivera and Negrete did not rise to the level of an Eighth Amendment violation. Without an underlying violation, there can be no supervisory liability against Defendant Waddle.

### 3. Eighth Amendment Excessive Force

The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citations omitted). For claims arising out of the use of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37, 130 S.Ct. 1175, 1178 (2010) (per curiam) (citing Hudson, 503 U.S. at 7) (internal quotation marks omitted); Furnace v. Sullivan, 705 F.3d 1021, 1028 (9th Cir. 2013).

The objective component of an Eighth Amendment claim is contextual and responsive to contemporary standards of decency, Hudson, 503 U.S. at 8 (quotation marks and citation omitted), and although de minimis uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident, Wilkins, 559 U.S. at 37, 130 S.Ct. at 1178 (citing Hudson, 503 U.S. at 9-10) (quotation marks omitted); Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002).

Plaintiff's claim of excessive force arises out of the incident prior to the search involving Defendants Rivera, Northcutt, Negrete, Arreola and King, and Defendants are not moving for summary judgment on this claim. Defendant Waddle is involved in the excessive force claim because of Plaintiff's allegations, at the pleading stage, that she instructed them to make Plaintiff submit to the search under any means necessary.

It is undisputed that Defendant Waddle instructed Defendants to proceed with the unclothed body search and that she had returned to her office prior to the incident. The parties dispute whether she used the phrase "by any means necessary." However, even if she did use the phrase, the undisputed evidence now before the Court does not support a finding that this was an indirect ordered to use excessive force.

Based on the undisputed evidence, Defendant Waddle did not violate the Eighth Amendment's prohibition against the use of excessive force.

### 4. RLUIPA and the First Amendment

RLUIPA provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution. . . , even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
> (1) is in furtherance of a compelling government interest; and
> (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1. Plaintiff bears the initial burden of demonstrating that defendants substantially burdened the exercise of his religious beliefs. Warsoldier v. Woodford, 418 F.3d 989, 994-95 (9th Cir. 2005). If plaintiff meets his burden, defendants must demonstrate that "any substantial burden of [plaintiff's] exercise of his religious beliefs is both in furtherance of a compelling governmental interest and the least restrictive means of furthering that compelling governmental interest." Id. (emphasis in original). "RLUIPA is to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." Id.

Similarly, under the First Amendment, "Inmates . . . retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (internal quotations and citations omitted). The protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008); Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997), overruled in part by Shakur, 514 F.3d at 884-85.

Plaintiff's religious claims are based on his belief that it would be indecent to expose his naked body to people that don't "look like" him, such as females or homosexuals. In objecting to the search, Plaintiff told Defendants that he believed it would be indecent to have females or homosexuals view his naked body.

In their motion, Defendants question whether Plaintiff's belief is central to his religious doctrine, and offer the "basic beliefs of a Rastafarian" to demonstrate that these beliefs do not

support the reason for Plaintiff's objection to the search.  However, "[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds."  Shakur v. Schriro, 514 F.3d 878, 884 (9th Cir. 2008) (citing Hernandez v. C.I.R., 490 U.S. 680, 699 (1989)).  For purposes of this motion, the Court will assume that Plaintiff's belief is central to his religious doctrine.

Again, it is undisputed that no female officers were present on the yard at the time of the search, and Plaintiff makes no claims about the presence of homosexuals.  On this basis alone, Plaintiff's First Amendment and RLUIPA claims fail because there was no substantial burden to his religious beliefs.

To the extent that Plaintiff argues that female staff present in an adjoining building *could have* viewed his naked body, this possibility, without more, is insufficient to demonstrate a substantial burden.  Similarly, Plaintiff suggests that he was paraded around naked and displayed in the medical facility.  As the Court noted previously, there is no evidence that Plaintiff was "paraded around" naked or placed on "display."  Without evidence to demonstrate that these claims rose to the level of a substantial burden, Plaintiff cannot defeat summary judgment.

Defendants Rivera, Negrete and Waddle are therefore entitled to summary judgment on Plaintiff's RLUIPA claim and his First Amendment claim.[10]

### 5. Eighth Amendment- Deliberate Indifference to Serious Medical Need

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must show deliberate indifference to his serious medical needs.  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 295 (1976)) (quotation marks omitted).  The two-part test for deliberate indifference requires the plaintiff to show (1) a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain, and (2) the defendant's response to the need was deliberately indifferent.  Jett, 439 F.3d at 1096 (quotation marks and citation omitted).

---

[10] Defendants also argue that Plaintiff cannot recover money damages under RLUIPA.  While they are correct, Wood v. Yordy, 753 F.3d 899, 904 (9th Cir.2014), the Court need to decide the issue because it has determined that Defendants are entitled to summary judgment on the underlying merits of the claim.

Deliberate indifference is shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference. Id. (citation and quotation marks omitted). Deliberate indifference may be manifested when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care. Id. (citation and quotations omitted). Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

It is undisputed that Defendant Mackey examined Plaintiff on May 12, 2011, for the purpose of clearing him for admission to Ad-Seg. Such an examination involves a limited physical examination to determine whether the inmate required medical treatment on an urgent basis prior to transfer, and possible treatment for any urgent or emergency medical conditions noted during the examination. The examining source also notifies a registered nurse of the findings.

The parties also agree that Plaintiff told Defendant Mackey that he was experiencing pain in his shoulder, mid-back and upper-back. He also complained of a headache, swelling about his right eye, bruising in his genital area and bleeding on the inside of his mouth. Plaintiff did not lose consciousness or have any broken bones. Based on her examination and Plaintiff's information, Defendant Mackey concluded that Plaintiff did not have any urgent medical needs and did not require emergency care. Defendant Mackey cleared Plaintiff for admission to Ad-Seg and notified Registered Nurse Lundsford of her findings, with the understanding that Nurse Lundsford would ensure that Plaintiff received any follow-up care, if necessary. Plaintiff's issues cleared up within two months, without medical treatment.

Given the limited purpose of the examination, Plaintiff's explanation of his medical issues, and Defendant Mackey's understanding that Nurse Lundsford would handle any necessary follow-up treatment, Defendant has met her burden of demonstrating the absence of evidence to support Plaintiff's claim of deliberate indifference.

In his opposition, Plaintiff argues that Defendant Mackey did, in fact, find significant injuries. Citing his belief that she was attempting to cover up the incident, he contends that Defendant Mackey refused to treat the injuries to prevent any meaningful documentation of the injuries. ECF No. 64, at 20. In his deposition, Plaintiff states, "I just feel like I needed- I needed to be treated for the conditions that I- that I was suffering under." Pl.'s Dep. 185:7-9. Plaintiff's characterization of his injuries and the treatment he believes that he should have received, however, are beyond the purview of his lay opinion and do not suffice to defeat summary judgment. At most, Plaintiff's argument is a disagreement about treatment decisions, and this does not state a claim under the Eighth Amendment. Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012) (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122-23 (9th Cir. 2012) (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)).

Defendant Mackey is entitled to summary judgment on the Eighth Amendment claim for deliberate indifference.[11]

## V. FINDINGS AND RECOMMENDATIONS

The Court finds that Defendants' motion for partial summary judgment should be GRANTED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies may be filed within fourteen (14) days of service of

///
///
///
///
///

---

[11] The Court will not address Defendants' qualified immunity argument in light of the recommendation that the motion be granted on the merits.

1  objections.  The parties are advised that failure to file objections within the specified time may result
2  in the waiver of rights on appeal.  <u>Wilkerson v. Wheeler</u>, 772 F.3d 843 (9th Cir. 2014) (citing <u>Baxter</u>
3  <u>v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

   Dated:   **May 4, 2015**　　　　　　　　　　　　/s/ *Dennis L. Beck*
                                               UNITED STATES MAGISTRATE JUDGE